**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| EFFIE PITTMAN, Individually and for Others Similarly Situated<br><br>v.<br><br>RPNT ACUTE SERVICES, INC. | Case No. 6:23-cv-00348<br><br>Jury Trial Demanded<br><br>FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1.      Effie Pittman ("Pittman") brings this collective action to recover unpaid overtime wages and other damages from RPNT Acute Services, Inc. ("RPNT").

2.      Pittman worked for RPNT as a Dialysis Registered Nurse.

3.      Like the Putative Class Members (as defined below), Pittman regularly worked more than 40 hours in a workweek.

4.      But RPNT does not pay these employees overtime wages at the proper premium rate when they work in excess of 40 hours in a workweek.

5.      Instead, RPNT uniformly pays Pittman and the Putative Class Members different hourly rates (or "shift differentials") when they work weekend shifts and after they work 8 hours in a day.

6.      But RPNT fails to include these shift differentials in calculating these employees' regular rates of pay for overtime purposes.

7.      RPNT's shift differential pay scheme violates the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.* ("FLSA") by depriving Pittman and the Putative Class Members of overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for the hours they work in excess of 40 hours in a workweek.

8. Similarly, RPNT also uniformly pays Pittman and the Putative Class Members per diems when they work night shifts.

9. But RPNT fails to include these per diems in calculating these employees' regular rates of pay for overtime purposes.

10. RPNT's per diem pay scheme violates the FLSA by depriving Pittman and the Putative Class Members of overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for the hours they work in excess of 40 hours in a workweek.

11. Finally, RPNT also uniformly pays Pittman and the Putative Class Members bonuses when they work "on-call" shifts.

12. But RPNT fails to include these bonuses in calculating these employees' regular rates of pay for overtime purposes.

13. RPNT's on-call bonus pay scheme violates the FLSA by depriving Pittman and the Putative Class Members of overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for the hours they work in excess of 40 hours in a workweek.

## JURISDICTION & VENUE

14. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15. This Court has personal jurisdiction over RPNT because RPNT is a domestic corporation that maintains its headquarters in Hurst, Texas.

16. Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

17. Specifically, during the relevant time period, Pittman primarily worked for RPNT in Waco, Texas, which is in this District and Division.

**PARTIES**

18. Pittman worked for RPNT as a Dialysis Registered Nurse from approximately December 2021 until December 2022.

19. Throughout her employment, RPNT classified Pittman as non-exempt and paid her on an hourly basis.

20. Throughout her employment, RPNT paid Pittman under its shift differential pay scheme, paying her higher hourly rates when she worked weekend shifts and/or worked more than 8 hours in a day.

21. But RPNT failed to include these shift differentials in calculating Pittman's regular rate of pay for overtime purposes.

22. Throughout her employment, RPNT also paid Pittman under its per diem pay scheme, paying her per diems when she worked night shifts.

23. But RPNT failed to include those per diems in calculating Pittman's regular rate of pay for overtime purposes.

24. Throughout her employment, RPNT also paid Pittman under its on-call bonus pay scheme, paying her bonuses when she worked "on-call" shifts.

25. But RPNT failed to include those on-call bonuses in calculating Pittman's regular rate of pay for overtime purposes.

26. Pittman's written consent is attached as **Exhibit 1**.

27. Pittman brings this action on behalf of herself and other similarly situated hourly, non-exempt RPNT employees who were paid under RPNT's (1) shift differential pay scheme, (2) per diem pay scheme, and/or (3) "on-call" bonus pay scheme.

28. RPNT uniformly pays these employees shift differentials, per diems, and/or bonuses that RPNT fails to include in calculating their regular rates of pay for overtime purposes.

29. Thus, RPNT uniformly deprives these employees of overtime wages at the proper premium rate – based on *all* renumeration received – during workweeks in which these employees work more than 40 hours in violation of the FLSA.

30. The FLSA Collective of similarly situated employees is defined as:

> **All hourly, non-exempt RPNT employees who received (1) shift differentials, (2) per diems, and/or (3) bonuses at any time during the past 3 years ("Putative Class Members" or "Putative Class").**

31. RPNT is a Texas corporation that maintains its headquarters in Hurst, Texas.

32. RPNT may be served with process by serving its registered agent: **Bernardino R. Manalo, 4425 West Airport Freeway, Suite 310, Irving, Texas 75062**, or wherever he may be found.

### COVERAGE UNDER THE FLSA

33. At all relevant times, RPNT was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

34. At all relevant times, RPNT was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

35. At all relevant times, RPNT has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

36. At all relevant times, RPNT has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including cell phones/devices, medical supplies, personal protective equipment, etc.) that have been moved in or produced for commerce.

37. In each of the past 3 years, RPNT has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

38. At all relevant times, Pittman and the Putative Class Members were RPNT's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

39. At all relevant times, Rogers and the Home Health Workers were engaged in commerce or in the production of goods for commerce.

40. RPNT uniformly paid Pittman and the Putative Class Members shift differentials, per diems, and/or bonuses depending on what type of shifts they worked.

41. But RPNT uniformly failed to include these shift differential payments, per diems, and bonuses in calculating Pittman's and the Putative Class Members' regular rates of pay for overtime purposes.

42. As a result, RPNT failed to pay Pittman and the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – in violation of the FLSA.

43. RPNT's shift differential, per diem, and bonus pay schemes, which deprive Pittman and the Putative Class Members of overtime compensation at the proper premium rate during workweeks in which they work more than 40 hours, violate the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

44. RPNT "provides patient centered dialysis services" to "area hospitals in North and Central Texas."[1]

45. RPNT employs patient care workers, including Pittman and the Putative Class Members, to provide nursing and dialysis services to its healthcare clients.

46. RPNT uniformly classifies these employees as non-exempt from overtime compensation and pays them on an hourly basis.

---

[1] https://rpntacute.com/about/ (last visited May 11, 2023).

47. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

48. For example, Pittman worked for RPNT as a Dialysis Registered Nurse from approximately December 2021 until December 2022.

49. As a Dialysis Registered Nurse, Pittman's primary responsibilities included providing patient care to patients undergoing dialysis treatments, such as taking vitals, conducting patient assessments, collecting pre-treatment dialysis data, reviewing patient histories, assessing patients' general health, and overseeing and assisting with dialysis treatments.

50. Throughout her employment, RPNT classified Pittman as non-exempt and paid her on an hourly basis.

51. Throughout her employment, RPNT paid Pittman shift differentials, per diems, and bonuses that RPNT failed to include in calculating her regular rate of pay for overtime purposes.

52. Specifically, under RPNT's shift differential pay scheme, RPNT paid Pittman $4.50/hour more for any hours she worked in excess of 8 hours in a day and $5.50/hour more for all hours worked on Saturday or Sunday:

> Shift Diff-$4.50 per hr for any hours worked after 8 hrs in a 12 or more hr day
> Weekend Diff-$5.50 per hour for every hr worked on Sat or Sun

53. Likewise, under RPNT's per diem pay scheme, RPNT paid Pittman $875 per diems when she worked certain night shifts:

```
10-29-2022 REGULAR              47.5000    8.00    380.00
10-29-2022 REGULAR              54.5000    8.50    463.25
10-29-2022 REGULAR              42.0000   22.00    924.00
10-29-2022 PER DIEM NT         875.0000    1.00    875.00
10-29-2022 ONCALL              200.0000    1.00    200.00
10-29-2022 CALL-BACK DIFF       63.0000    4.00    252.00
10-29-2022 REGULAR              50.0000   31.50   1575.00
```

54. Further, under RPNT's "on-call" bonus pay scheme, RPNT paid Pittman a $50/day bonus for any "on-call" shifts she worked during the week and a $100/day bonus for any "on-call" shifts she worked on the weekends:

> On Call $50 per day for each week day; $100 per day for each weekend day.

55. But throughout Pittman's employment, RPNT failed to include these shift differentials, per diems, and bonuses in calculating her regular rate of pay for overtime purposes.

56. Pittman and the Putative Class Members performed their jobs under RPNT's supervision, and using materials, equipment, and technology approved and supplied by RPNT.

57. RPNT requires Pittman and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

58. At the end of each pay period, Pittman and the Putative Class Members received wages from RPNT that were determined by common systems and methods that RPNT selected and controlled.

59. RPNT requires its hourly, non-exempt employees, including Pittman and the Putative Class Members, to record their hours worked using RPNT's timeclock system.

60. Further, RPNT uniformly subjects Pittman and the Putative Class Members to its uniform shift differential, per diem, and bonus pay schemes.

61. Specifically, RPNT pays these employees shift differentials, per diems, and/or bonuses depending on what type of shifts they worked.

62. But RPNT fails to include these shift differentials, per diems, and bonuses in calculating Pittman's and the Putative Class Members' regular rates of pay for overtime purposes.

63. RPNT's shift differential, per diem, and bonus pay schemes violate the FLSA by depriving Pittman and the Putative Class Members of overtime wages at rates not less than 1.5 times

their regular rates of pay – based on *all* renumeration received – for all overtime hours worked in violation of the FLSA.

64. Pittman worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

65. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

66. Indeed, Pittman and the Putative Class Members typically work 12- to 16-hour shifts for 4 to 5 days a week.

67. As a result, Pittman and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

68. When Pittman and the Putative Class Members worked more than 40 hours in a workweek, RPNT did not pay them 1.5 times their regular hourly rate – based on *all* renumeration received – for all overtime hours worked because RPNT failed to include these employees' shift differentials, per diems, and/or bonuses in calculating their regular rates of pay for overtime purposes.

69. RPNT knew, or should have known, it was subject to the FLSA, including its overtime requirements.

70. RPNT knew, or should have known, the FLSA requires it to pay employees, including Pittman and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in a workweek.

71. RPNT knew, or should have known, it was required to include Pittman's and the Putative Class Members' shift differentials, per diems, and bonuses in calculating these employees' regular rates of pay for overtime purposes.

72. RPNT knew, or should have known, Pittman and the Putative Class Members worked more than 40 hours in a workweek.

73. Nonetheless, RPNT failed to pay Pittman and the Putative Class Members overtime wages at the proper premium rate – based on *all* renumeration received – for all hours these employees worked in excess of 40 hours in a workweek.

74. RPNT knowingly, willfully, and/or in reckless disregard carried out its illegal shift differential, per diem, and bonus pay schemes that deprived Pittman and the Putative Class Members of overtime wages at the proper premium rate during workweeks in which these employees worked in excess of 40 hours in violation of the FLSA.

75. RPNT's failure to pay Pittman and the Putative Class Members overtime compensation at the proper premium rate was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate made in good faith.

## COLLECTIVE ACTION ALLEGATIONS

76. Pittman brings her claims as a collective action under § 216(b) of the FLSA.

77. The Putative Class Members were uniformly victimized by RPNT's shift differential, per diem, and/or bonus pay schemes, which are in willful violation of the FLSA.

78. Other Putative Class Members worked with Pittman and indicated they were paid in the same manner, performed similar work, and were subject to RPNT's same illegal pay schemes.

79. Based on her experiences with RPNT, Pittman is aware RPNT's illegal practices were imposed on the Putative Class Members.

80. The Putative Class Members are similarly situated in all relevant respects.

81. Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

82. Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

83. Rather, the Putative Class is held together by RPNT's uniform shift differential, per diem, and/or bonus pay schemes that systematically deprived Pittman and the Putative Class Members of overtime wages at the proper premium rate (based on all renumeration received) when they worked in excess of 40 hours in a workweek.

84. The Putative Class Members are similarly denied overtime compensation at the proper premium rate when they work more than 40 hours in a workweek.

85. The back wages RPNT owes to Pittman and the Putative Class Members will be calculated using the same records and using the same formula.

86. Pittman's experiences are therefore typical of the experiences of the Putative Class Members.

87. Pittman has no interests contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

88. Like each Putative Class Member, Pittman has an interest in obtaining the unpaid wages owed under federal law.

89. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

90. Absent a collective action, many Putative Class Members will not obtain redress for their injuries, and RPNT will reap the unjust benefits of violating the FLSA.

91. Further, even if some of the Putative Class Members could afford individual litigation against RPNT, it would be unduly burdensome to the judicial system.

92. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

93. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

94. Among the common questions of law and fact are:

   a. Whether RPNT failed to include Pittman's and the Putative Class Members' shift differentials, per diems, and/or bonuses in calculating these employees' regular rates of pay for overtime purposes in violation of the FLSA;

   b. Whether RPNT's shift differential, per diem, and/or bonus pay schemes deprived Pittman and the Putative Class Members of overtime wages at the proper premium rate when they worked more than 40 hours in a workweek in violation of the FLSA;

   c. Whether RPNT's violations of the FLSA resulted from a continuing course of conduct;

   d. Whether RPNT's decision not to pay Pittman and the Putative Class Members overtime compensation at the proper premium rate was made in good faith; and

   e. Whether RPNT's violations of the FLSA were willful.

95. Pittman and the Putative Class Members sustained damages arising out of RPNT's illegal and uniform employment policy.

96. Pittman knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

97. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to RPNT's records, and there is no detraction from the common nucleus of liability facts.

98. Therefore, the issue of damages does not preclude collective treatment.

99. RPNT is liable under the FLSA for failing to pay Pittman and the Putative Class Members overtime compensation at the proper premium rate for all hours worked in excess of 40 hours in a workweek.

100. Consistent with RPNT's illegal shift differential, per diem, and bonus pay schemes, Pittman and the Putative Class Members were not paid overtime compensation at the proper premium rate based on *all* renumeration received.

101. As part of its regular business practices, RPNT intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Pittman and the Putative Class Members.

102. RPNT's illegal policies deprived Pittman and the Putative Class Members of overtime wages at the proper premium rate for the hours they worked in excess of 40 hours in a workweek, which they are owed under federal law.

103. There are many similarly situated Putative Class Members who have been denied overtime pay at the proper premium rate in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

104. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

105. Those similarly situated employees are known to RPNT, are readily identifiable, and can be located through RPNT's records.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

106. Pittman realleges and incorporates all other paragraphs by reference.

107. Pittman brings her FLSA claim as a collective action on behalf of herself and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

108. RPNT violated, and is violating, the FLSA by failing to pay Pittman and the Putative Class Members overtime wages at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 in a single workweek.

109. Throughout the relevant period, RPNT paid Pittman and the Putative Class Members shift differentials, per diems, and/or bonuses that RPNT failed to include in calculating these non-exempt employees' regular rates of pay for overtime purposes.

110. Pittman and the Putative Class Members have been harmed as a direct and proximate result of RPNT's unlawful conduct because they have been deprived of wages owed for work that they performed and from which RPNT derived a direct and substantial benefit.

111. RPNT knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Pittman and the Putative Class Members overtime compensation at the proper premium rate.

112. RPNT's failure to pay Pittman and the Putative Class Members overtime compensation at the proper premium rate was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate made in good faith.

113. Accordingly, Pittman and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

### **JURY DEMAND**

114. Pittman demands a trial by jury.

### **RELIEF SOUGHT**

WHEREFORE, Pittman, individually and on behalf of the Putative Class Members, seeks the following relief:

a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. An Order pursuant to Section 16(b) of the FLSA finding RPNT liable for unpaid overtime wages due to Pittman and the Putative Class Members, plus liquidated damages in an amount equal to their unpaid overtime compensation;

c. Judgment awarding Pittman and the Putative Class Members all unpaid compensation and other damages available under the FLSA;

d. An Order awarding attorney's fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
    **Michael A. Josephson**
    TX Bar No. 24014780
    Federal ID No. 27157
    **Andrew W. Dunlap**
    TX Bar No. 24078444
    Federal ID No. 1093163
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

AND

    **Richard J. (Rex) Burch**
    TX Bar No. 24001807
    Federal ID No. 21615
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF
& PUTATIVE CLASS MEMBERS**