UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **EFFIE PITTMAN, Individually and for Others Similarly Situated,**<br><br>v.<br><br>**RPNT ACUTE SERVICES, INC.** | **Case No. 6:23-cv-00348-JCM** |

**JOINT MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT**

Plaintiff Effie Pittman, on behalf of herself and on behalf of all others who have joined this case as opt-in plaintiffs (the "Opt-in Plaintiffs," and collectively with Pittman, "Plaintiffs") and Defendant RPNT Acute Services, Inc. ("Defendant" or "RPNT") (altogether, the "Parties") file this Joint Motion for Approval of Fair Labor Standards Act ("FLSA") Collective Action Settlement, and would respectfully show the Court as follows:

**1.    INTRODUCTION & BACKGROUND**

Plaintiff and Defendant have reached a settlement of the pending *bona fide* dispute concerning allegations of unpaid overtime wages under the FLSA, 29 U.S.C. § 201, *et seq*. The settlement provides current and former employees of RPNT who were alleged to have been deprived of overtime wages for all hours worked over 40 in a workweek compensation for all their alleged unpaid overtime claims.

On May 11, 2023, Pittman filed this collective action lawsuit alleging RPNT failed to properly calculate its non-exempt employees' regular rates of pay. *See* Dkt. 1. Pittman thereafter amended her lawsuit to allege RPNT failed to pay Pittman and others like her for their compensable off-the-clock meal periods and for off-the-clock work suffered as a result of an allegedly non-neutral rounding policy. *See* Dkt. 22. Pittman further alleged RPNT deducted a sign-on bonus from one of her final workweeks, thereby reducing her regular rate of pay to below minimum wage for that week. *Id.*

At all times, RPNT maintained that it paid Pittman and the other non-exempt employees at issue in this case appropriately in accordance with the FLSA for all compensable hours worked. RPNT has, throughout the litigation, denied all of Plaintiffs' allegations and denied that it owes Plaintiffs any amounts under the FLSA.

The Parties thereafter stipulated and jointly requested permission to send a court-authorized notice to those current and former non-exempt employees whom Pittman alleged were similarly situated, in accordance with 29 U.S.C. § 216(b). *See* Dkt. 27. The Court granted that stipulated request on November 7, 2023 and authorized issuance of FLSA notice to the group of allegedly similarly situated workers. *See* Dkt. 29. The consent form executed by the Opt-in Plaintiffs states as follows:

> I hereby consent to having Plaintiff Effie Pittman and Plaintiff's Counsel make all decisions regarding the litigation, the method and manner of conducting this litigation, the terms of any potential settlement of this litigation, releasing of claims, entering into an agreement with Plaintiff's Counsel regarding attorneys' fees and costs, and all other matters pertaining to the lawsuit.

*See* Dkt. 27-1 at 5.

After the close of the opt-in period, 44 total individuals had submitted written consents to join the collective action to litigate their FLSA claims with Pittman. In total, there are 45 party plaintiffs pursuing their FLSA claims in this lawsuit.

During the discovery period, the Parties exchanged discovery and other information as to the Plaintiffs' claims and defenses raised by RPNT. RPNT provided Plaintiffs' Counsel with pay data and other data for Plaintiffs during the relevant time period covered by this lawsuit. With this information, the Parties calculated the potential damages they believed could be available to the Plaintiffs if they prevailed.

The Parties then attended mediation with Mark Shank. With the assistance of Mr. Shank, the Parties reached a settlement. The final terms of the settlement are reflected in the Settlement

Agreement and Release of Claims (the "Settlement Agreement"), which is attached hereto as Exhibit 1.

**2.    ARGUMENT & AUTHORITIES**

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid overtime wages brought pursuant to the FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* Some "[c]ourts therefore have refused to enforce wholly private settlements." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)).

Instead, many courts recognize only two valid ways by which individuals can release or settle FLSA claims: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food*, 679 F.2d at 1353; *Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960 (5th Cir. 1947) (enforcing a state court stipulated judgment entered upon disputed issues of both law and fact as *res judicata* to bar a federal FLSA suit). Settlements in the context of litigation, where there are *bona fide* issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food*, 679 F.2d at 1354.

When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355. The endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to

assess the potential risks and rewards of litigation." *Quintanilla v. A&R Demolition, Inc.*, No. H-04-1965, 2008 WL 9410399, at *5 (S.D. Tex. May 7, 2008) (citing *San Antonio Hispanic Policy Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 461 (W.D. Tex. 1999)).

The Parties here agree the settlement is fair and represents a reasonable compromise of the disputed issues in this case and resolves a *bona fide* dispute underlying the Plaintiffs' FLSA claims.

### A. The settlement provides fair compensation for the Plaintiffs' FLSA claims.

The Parties' settlement is fair and reasonable, as it provides fair and reasonable compensation to the Plaintiffs. The damages calculations are based upon the records showing the days and on-the-clock hours worked as reflected in RPNT's payroll records for the Plaintiffs. The amounts claimed to be owed for each individual during weeks in which they allegedly worked more than 40 hours (*i.e.*, 30 minutes per shift worked that was deducted added back to the timekeeping records) were then added together to determine the total alleged unpaid overtime wages for the Plaintiffs.

The settlement is fair and reasonable because the amount of the settlement provides for a reasonable compromise given the defenses raised by RPNT and the potential challenges of avoiding "decertification" of the collective action and/or trying the FLSA claims of 45 party plaintiffs. Here, the settlement provides for a recovery of approximately 53% of the total amount of alleged unpaid overtime wages (not including liquidated damages or attorneys' fees/costs) over a 3-year lookback period. That is, the Plaintiffs are receiving approximately 54% of their alleged unpaid overtime wages allegedly owed.

The recovery reached in the Settlement Agreement is also significant because the Parties disagreed over the merits of the case and the likelihood of maintaining collective action status through trial. Plaintiffs argued they were required to remain on-duty during their unpaid meal periods and that they were subjected to a time-rounding practice that was non-neutral in application. However, RPNT maintained the unpaid meal periods were non-compensable because the Plaintiffs were fully relieved

of their duties during the meal periods and that its time-rounding system complied with the FLSA and, in any event, did not result in lost work time for the Plaintiffs.

Further, the Parties disagreed as to whether Plaintiffs could satisfy their burden to demonstrate RPNT acted willfully in its alleged FLSA violations, which in turn affects whether Plaintiffs could recover damages for 2 years or 3 years prior to the date on which they joined the lawsuit. *See* 29 U.S.C. § 255. The Parties also disagreed as to whether RPNT could satisfy its burden of proving good faith and reasonableness and, consequently, the extent to which any liquidated damages could be awarded in the case.

Due to the directly conflicting factual allegations and differing views on the applicable law, the Parties believe the amounts reflected in the Settlement Agreement and its Exhibit A are in the best interests of the Parties. Additionally, the settlement allows the Parties to resolve the claims at issue without the necessity or delay of full-blown discovery, dispositive motion briefing, trial, and possible appeals. In exchange for these payments, Plaintiffs will agree to release RPNT from any and all wage-and-hour claims they may have.

**B.     The settlement is fair and reasonable in light of the uncertainty of the outcome.**

The settlement allows each Opt-in Plaintiff to receive an amount from the settlement fund that is based upon each individual's proportionate share of the total alleged damages available to all Opt-in Plaintiffs in the aggregate, net of attorneys' fees and costs. That is, hypothetically, if an Opt-in Plaintiff claims he or she is owed $2,000 and the total settlement amount is $100,000, his/her proportionate share of the settlement is two percent (2%) and he/she will receive that percentage of the settlement proceeds after fees, costs, and the service award are deducted. The pro rata allocation of each Opt-in Plaintiff is set forth in Exhibit A to the Settlement Agreement.

The settlement also provides for a minimum payment threshold of $100 to ensure those Opt-in Plaintiffs with limited/miniscule potential damages receive at least nominal compensation in exchange for a release of their wage-and-hour claims.

As part of the settlement, the Parties agreed to a service award for Plaintiff Pittman. Otherwise known as a "service payment" or "incentive award," this amount is in addition to Pittman's pro rata settlement share. In light of the efforts resulting in a settlement on behalf of the Opt-in Plaintiffs, the valuable contributions Pittman made throughout the litigation, particularly in its initial phases, and because the incentive payment is meant to compensate Pittman in exchange for her wider release of claims, Plaintiffs' Counsel submits the incentive award is reasonable and should be approved.

**C.      The Parties agreed on a reasonable notice plain to administer the settlement.**

The Parties have agreed to self-administer this settlement. RPNT will mail to Plaintiffs' Counsel the individual settlement checks and Plaintiffs' Counsel will send the checks to the Plaintiffs along with a copy of the Notice attached to the Settlement Agreement as Exhibit B, which explains the key terms of the settlement and the Plaintiffs' release of claims. All Opt-in Plaintiffs will receive a payment of at least $100 from this settlement. The release of claims for the Opt-in Plaintiffs is a release of wage-and-hour claims only. This settlement process is fair and equitable to all Parties and eliminates the need for a separate claim form.

**D.      The attorneys' fees and costs sought are fair and reasonable.**

Additionally, the amount sought by Plaintiffs' Counsel for attorneys' fees is fair and reasonable. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Plaintiffs' Counsel here investigated the claims, analyzed timekeeping and payroll

data, managed communication with the Opt-in Plaintiffs, and performed other work that resulted in a beneficial settlement.

When evaluating a claim for fees, a party's success in the litigation is the "most critical" factor. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 257-58 (5th Cir. 2018). Plaintiffs' Counsel has prevailed in securing compensation for its clients under its theory of the case. Specifically, Plaintiff's Counsel achieved a collective settlement that provides recovery for each Opt-in Plaintiff. Under RPNT's theory, the Opt-in Plaintiffs would be owed nothing.

Moreover, Plaintiffs' Counsel has attained a collective settlement that provides for a significant percentage of Plaintiffs' estimated damages, which is a benefit to Plaintiffs given the facts of the case and relative merits of, and risks related to, Plaintiffs' claims and RPNT's asserted defenses. In a case focused on unpaid meal breaks and time-rounding (as well as a bonus "clawback" allegation that required substantial expertise in the wage and hour field), obtaining and maintaining certification of the collective action throughout trial was no guarantee and, if no settlement had been reached, would have been a contentious point of the litigation. Thus, the work performed by Plaintiffs' Counsel provided a significant benefit to the Plaintiffs. Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded (either by "de-certifying" the collective, on the merits of one or more issues at summary judgment, or at trial). Therefore, the Plaintiffs were at significant risk of non-payment. This risk of non-payment strongly supports the amount requested in attorneys' fees and costs here.

E.   **The Court should approve the settlement.**

The terms of the settlement have been approved by Plaintiffs, Plaintiffs' Counsel, Defendant, and Defense Counsel. The settlement was negotiated at arms' length by experienced counsel, and with the help of a respected and knowledgeable mediator in Mark Shank. The parties entered into the

Settlement Agreement voluntarily and knowingly. The Parties agree the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note there is a "strong presumption" in favor of finding a settlement fair. *Sims v. Hous. Auth. City of El Paso*, No. EP-10-CV-109-PRM, 2012 WL 10862119, at *3 (W.D. Tex. Feb. 29, 2012). This is especially true where, as here, "the agreement results from an adversarial proceeding." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience litigating, and settling, federal and state wage and hour claims previously and, in this case, were particularly well informed as to the facts and circumstances of the litigation. Additionally, the Parties engaged the assistance of a well-respected mediator, who assisted with the Parties' settlement negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of comprehensive discussions, as well as exhaustive and hard-fought negotiations.

Ultimately, there can be no question that this Settlement Agreement represents fair value for the Plaintiffs. Each of the Plaintiffs will receive payment for their alleged damages under the FLSA without the risk or expense of continued litigation or trial. Indeed, the amounts recovered under the settlement are fair on both a collective and individual basis.

3. **CONCLUSION**

The terms of the settlement have been approved by Plaintiff, Plaintiffs' Counsel, Defendant, and Defendant's Counsel. The settlement was negotiated at arms' length by experienced counsel, with the assistance of a well-qualified and experienced mediator. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, the Parties jointly request

the Court approve the FLSA settlement and dismiss this lawsuit with prejudice in conjunction with same following consummation and funding.

For the foregoing reasons, the Parties respectfully request the Court enter an order approving the Settlement Agreement. A proposed Order is attached for the Court's consideration.

Respectfully and jointly submitted on August 9, 2024.

| | |
|---|---|
| /s/ William M. Hogg | /s/ Kelli M. Hinson (w/ permission) |
| Michael A. Josephson | Kelli M. Hinson |
| Andrew W. Dunlap | Mike Birrer |
| William M. Hogg | Tayler R. Gray |
| **JOSEPHSON DUNLAP LLP** | **CARRINGTON, COLEMAN,** |
| 11 Greenway Plaza, Suite 3050 | **SLOMAN & BLUMENTHAL, L.L.P.** |
| Houston, Texas 77046 | 901 Main Street, Suite 5500 |
| 713-352-1100 – Telephone | Dallas, Texas 75202 |
| 713-352-3300 – Facsimile | 214-855-3000 – Telephone |
| mjosephson@mybackwages.com | 214-580-2641 – Facsimile |
| adunlap@mybackwages.com | khinson@ccsb.com |
| whogg@mybackwages.com | mbirrer@ccsb.com |
| | tgray@ccsb.com |
| Richard J. (Rex) Burch | |
| **BRUCKNER BURCH PLLC** | *Counsel for Defendant* |
| 11 Greenway Plaza, Suite 3025 | |
| Houston, Texas 77046 | |
| 713-877-8788 – Telephone | |
| rburch@brucknerburch.com | |

*Attorneys for Plaintiff and Putative Collective Members*